UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

APRIL L. KNAPP, *as Administratix
of the Estate of* John L. Harless,

    Plaintiff,

v.                                    CIVIL ACTION NO. 5:21-cv-00502

AMERICAN HONDA MOTOR CO., INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff's Amended Verified Petition and Motion to Settle [ECF 210], filed February 28, 2025, and supplement thereto [ECF 220], filed May 22, 2025. Also pending is Ms. Lisa Harless Lizotte's Written Proposition [ECF 212], received and filed March 7, 2025.

**I.**

On September 7, 2021, Plaintiff initiated this case alleging, *inter alia*, design defect and negligence leading to the untimely death of John L. Harless. [ECF 1]. On November 15, 2024, the Court was notified the action settled. [ECF 195]. Plaintiff soon after filed her Verified Petition and Motion to Settle [ECF 197] pursuant to *West Virginia Code* section 55-7-7, proposing a final distribution of settlement proceeds to be approved by the Court.

Plaintiff's petition and motion recognized six potential distributees who fell under the relevant statutory definition. [ECF 197 at ¶ 10]. Plaintiff sent by certified mail copies of (1) her petition and motion, (2) the Court's Order and Notice scheduling the settlement approval hearing, and (3) respective, unexecuted affidavits contemplating consent to the proposed distribution of settlement proceeds. [ECF 218 at 8–9; *see* ECF 196].

Three of the potential distributees -- Mr. Harless' children -- agreed to share equally in the net settlement proceeds and executed their respective affidavits to that effect. [ECF 197 at ¶ 13; ECF 200, Ex. 1–3]. The other three -- Mr. Harless' siblings -- received the materials but did not execute the affidavits therein. [ECF 200, Ex. 4, 6, and 8; ECF 218 at 8-9]. Mr. Harless' siblings all indicated they would not seek any portion of the settlement proceeds during their respective depositions. [ECF 200, Ex. 5, 7, and 9]. This includes Ms. Lisa Harless Lizotte, as Mr. Harless' sister.

On February 14, 2025, the Court convened the parties and their counsel for a settlement approval hearing as to the Verified Petition and Motion to Settle [ECF 197] and supplement thereto [ECF 200]. Ms. Lizotte appeared for the hearing and conveyed to the Court her new intention to seek a portion of the settlement proceeds. [ECF 218 at 17, ¶¶ 6-10]. When the Court inquired if she sought a particular portion of the proceeds, she replied: "Whatever the Court deems fair . . ." [*Id.* at 18, ¶¶ 14–15].

Following the February 14, 2025, settlement approval hearing, the Court entered an Order [ECF 208] directing (1) Plaintiff to file a revised settlement petition reciting the proposed distribution amounts in detail, and (2) Ms. Lizotte to submit a written position regarding her late-rising interest in the net settlement proceeds. Plaintiff timely filed her Amended Verified Petition and Motion to Settle [ECF 210] and supplement thereto [ECF 220], which satisfied the Court's Order and inquiries more fully set forth at the above-stated hearing. Plaintiff's amended petition and motion still did not allocate a portion of the net settlement proceeds to Ms. Lizotte. [*See* ECF 210; *see also* ECF 220]. Ms. Lizotte timely filed her written proposition. [ECF 212].

## II.

West Virginia's wrongful death statute requires court approval of a related compromise. W. Va. Code § 55-7-7 (1989) ("*Upon approval of the compromise*, the court shall apportion and distribute such damages, or the compromise agreed upon . . . .") (emphasis added); *Est. of Postlewait ex rel. Postlewait v. Ohio Valley Med. Ctr., Inc.*, 214 W. Va. 668, 674, 591 S.E.2d 226, 232 (2003) ("Even in instances where the only [distributees] to such a compromise are adults, the statute requires that such agreements be presented to the circuit court for approval.") In conjunction with that approval, the Court wields significant discretion with respect to the shares ultimately distributed to potential distributees. W. Va. Code § 55-7-6(b) (1992) ("In every such action for wrongful death, the jury, or in a case tried without a jury, the court, *may award such damages as to it may seem fair and just*, and, *may direct in what proportions the damages shall be distributed . . . .*") (emphasis added). The Supreme Court of Appeals of West Virginia has opined:

> [W]e emphasize that, in general, a circuit court is not required to award equal shares to all persons who are distributees under the wrongful death act. Instead, pursuant to W. Va. Code § 55–7–6(b), a circuit court or jury has wide discretion to award wrongful death damages "in . . . proportions" that "may seem fair and just" under the facts of a particular case.

*Graham v. Asbury*, 234 W. Va. 286, 292, 765 S.E.2d 175, 181 (2014) (cleaned up). Thus, the relevant determination is discretionary and fact-intensive. *Id.*

The Court's discretion is guided by the principal that "[t]he essential, beneficial purpose of the wrongful death act is 'to compensate the [distributees] for the loss they have suffered as a result of the decedent's death.'" *Bradshaw v. Soulsby*, 210 W. Va. 682, 687, 558 S.E.2d 681, 686 (2001) (quoting *White v. Gosiene*, 187 W. Va. 576, 582, 420 S.E.2d 567, 573 (1992)); *see also Graham*, 234 W. Va. at 289, 765 S.E.2d at 178. To be compensable, a distributee's loss may be personal or financial in nature. W. Va. Code § 55-7-6(c)(1) (1992); *see*

3

*McDavid v. United States*, 213 W. Va. 592, 584 S.E.2d 226 (2003). A distributee's loss need not be momentous. *Bradshaw v. Soulsby*, 210 W. Va. 682, 684, 558 S.E.2d 681, 683 (2001) ("Because the wrongful death act alleviates the harshness of the common law, it is to be given a liberal construction to achieve its beneficent purposes."); *see also Graham*, 234 W. Va. at 289, 765 S.E.2d at 178. With this framework in mind, the Court turns toward the factual record to dissect Ms. Lizotte's midnight-hour claim to any net settlement proceeds stemming from the untimely demise of her late brother, Mr. Harless.

### III.

Ms. Lizotte gave her sworn deposition testimony in this matter on July 8, 2022. In her deposition, Ms. Lizotte insinuated she had not spoken to Mr. Harless since 2011. [*See* ECF 218 at 27]. When asked if she had incurred any expenses related to Mr. Harless' death, Ms. Lizotte answered, "No. I bought my brother a beautiful flower arrangement and went to his funeral, and I did what any sister would do, even if she hadn't seen him for all those years . . ." [ECF 200, Ex. 7 at ¶ 2–8]. When asked about her intention to seek any award of damages Mr. Harless' estate potentially recovered, she answered, "I don't want anything from him or his family." [*Id.* at ¶ 18–23]. Ms. Lizotte further testified, "I think that [Mr. Harless] was greedy. My mom and dad always said that he was greedy. I think he raised his children the same. I know his wife was." [*Id.* at ¶ 14–16].

At the February 14, 2025, settlement approval hearing -- notably after potential bona fide dollar amounts emerged for the first time in the form of Plaintiff's mailed materials -- Ms. Lizotte attempted to paint a picture of a less strained relationship with her late brother. [*See* ECF 218 at 26–27]. Though, when confronted with her past testimony Ms. Lizotte agreed to characterizing Mr. Harless as someone who "brought on a lot of dumb shit" and who "wasn't a

4

very good person." [*Id.* at 29–30]. She explained she was "very angry" at the time she speculated about noncommunication with him for a number of years before his death. [*Id.* at 27].

Most comprehensive and telling is Ms. Lizotte's written proposition to the Court. In her proposition, Ms. Lizotte contends that "[b]ecause [Mr. Harless and she] spat didn't mean [they] didn't care." [ECF 212 at 13]. She reflects on time spent with Mr. Harless while their father was sick. [*Id.*] She argues "[i]f the siblings were not to be considered, we should not have been bothered or notified." [*Id.* at 13].

Though, in the same letter, Ms. Lizotte's animosity toward Mr. Harless is ever-present and pervasive. Ms. Lizotte states that her brother "made no amends to the ones he hurt . . . [and] never accepted the love that was available for him[.]" [ECF 212 at 2]. She contemplates whether his "soul" is "in heaven," stating:

> My heart breaks that I still worry about his soul in heaven for I know with all my heart he believed in the Lord. But he knew to be sober when the Lord called. I've prayed and prayed for my brother[']s soul. He wasn't sober.

[*Id.* at 3]. Ms. Lizotte represents that a jointly owned storage building is "what [the siblings] all fell out over," [*Id.* at 6], and accuses her siblings, Mr. Harless included, of associated theft. [*Id.* at 6–8]. She accuses him of otherwise taking her inheritance in relation to their mother's will, exclaiming, "It was never enough . . . [a]ll my inheritance and a 5% [executrix] fee. That was supposed to be my part of the inheritance. Money [Mr. Harless] seen to that I would not get . . . ." [*Id.* at 9].

Considered in its entirety, the record illustrates the lack of any meaningful familial relationship between the two adult siblings for a considerable amount of time before Mr. Harless' death. This adequately explains Ms. Lizotte's initial stance, that she "[did not] want anything from [her brother] or his family." She has hardly attempted to hide her disdain. Thus, it is abundantly

clear to the Court that Ms. Lizotte's midnight-hour change in position was based, perhaps entirely, upon the potential for monetary gain as opposed to any human grief, regret, or longing associated with her brother's passing. The record does not reflect the "greed" Ms. Lizotte has steadfastly ascribed to Mr. Harless, but it does reflect her greed, which the wrongful death statute does not contemplate.

Comparing these findings with the "essential, beneficial purpose" of West Virginia's wrongful death statute, the Court cannot cite a single compelling reason to modify the ultimate settlement petition to include Ms. Lizotte as a distributee. Financially, the siblings were independent, and Ms. Lizotte has not contributed in any way to direct or indirect expenses arising from Mr. Harless' death. The current distributions to Mr. Harless' children are consistent with the spirit of the statute, inasmuch as it seeks to compensate for the children's emotional loss suffered as a result of their father's passing. Ms. Lizotte suffered no comparable, nor even measurable, loss.

Accordingly, the Court **APPROVES** the settlement distribution as structured in Plaintiff's Amended Verified Petition and Motion to Settle [**ECF 210**] and supplement thereto [**ECF 220**]. The Court **DIRECTS** Plaintiff to file a signed, notarized, and otherwise executed version of the Petition. The following motions are **DENIED AS MOOT**: Plaintiff's Verified Petition and Motion [**ECF 197**], supplement thereto [**ECF 200**], Plaintiff's Verified Petition and Motion [**ECF 203**].

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: May 27, 2025



Frank W. Volk
Chief United States District Judge